1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JASON E COBB,

              Plaintiff,

    v.

JPMORGAN CHASE BANK, N.A., et al.,

              Defendants.

Case No.  13-cv-01955-JSW

**ORDER GRANTING MOTIONS TO DISMISS**

**(DOCKET NOS. 21, 32, 37, 39, 45, 47, 49, 50, 52, 83, 104, 113, 158, 169, 183)**

**INTRODUCTION**

      This matter comes before the Court upon consideration of Motions to Dismiss filed by the following Defendants: Cameron Bowman ("Mr. Bowman") (Docket No. 21); JPMorgan Chase Bank, N.A. ("JPMorgan") (Docket No. 32); Jeffrey Kline, Ph.D. ("Dr. Kline") (Docket No. 37); the County of San Mateo ("San Mateo County") and Stephen Wagstaffe ("Mr. Wagstaffe") (collectively the "San Mateo County Defendants") (Docket No. 39); the City of Menlo Park ("Menlo Park"), Robert Jonsen ("Mr. Jonsen") and Peter Ohtaki ("Mr. Ohtaki") (collectively, the "Menlo Park Defendants") (Docket No. 45); Jeff Kitigawa ("Mr. Kitigawa"), Tara Lappin ("Ms. Lappin") and Alicia Perdue ("Ms. Perdue") (collectively the "Cisco Defendants") (Docket No. 47); Morgan Lewis Bockius, LLP ("Morgan Lewis") and Dennis Sinclitico ("Mr. Sinclitico") (collectively, the "Morgan Lewis Defendants") (Docket No. 49); Anthony Smith ("Mr. Smith") (Docket No. 50); Deborah Appel ("Ms. Appel") (Docket No. 52); Amanda Freel ("Ms. Freel") (Docket No. 83); the Superior Court for the County of San Mateo ("San Mateo Superior Court"), Commissioner Susan Greenberg ("Commissioner Greenberg"), and Eddie Estrada ("Mr. Estrada")

(collectively the "Superior Court Defendants") (Docket No. 104); Stanford Hospital and Clinics ("Stanford") (Docket No. 113); Ernest Brede ("Mr. Brede"), Luis Contreras ("Mr. Contreras"), Paul Demosthenes ("Mr. Demosthenes"), William Douglas ("Mr. Douglas"), Kerry Woodhams ("Mr. Woodhams"), Paul Yamaguchi ("Mr. Yamaguchi"), Dan Nilges ("Mr. Nilges"), Glen M. Watson ("Mr. Watson"), and Donald Maynor ("Mr. Maynor") (Docket No. 158); Alfred Alatamirano ("Mr. Altamirano"), Ellen Altamirano ("Mrs. Altamirano"), and Jennifer Altamirano ("Ms. Altamirano")  (Docket No. 169), and Ron Nerio ("Mr. Nerio") and BJ Fadem ("Mr. Fadem") (Docket No. 183).[1]

The Court has considered the parties' briefs, including the supplemental briefing ordered by the Court, relevant legal authority, and the record in this case.  For the reasons set forth in the remainder of this Order, the Court HEREBY GRANTS the motions to dismiss the federal claims, DENIES Mr. Cobb leave to amend those claims, and dismisses the state law claims without prejudice.

## BACKGROUND

This case is a continuation of several lawsuits that Plaintiff, Jason Cobb ("Mr. Cobb") has filed in recent years in which he claims an "association-in-fact RICO enterprise … has sought to defraud and intentionally harm" him.  (Docket No. 5, Compl. ¶¶ 1-3.)[2]  Mr. Cobb, and his father, Jonathan D. Cobb, Sr. ("Mr. Cobb, Sr.") are former members of The English Menlo Park Congregation of Jehovah's Witnesses (the "Congregation"), and were officers and directors of The English Congregation of Jehovah's Witnesses, Menlo Park, California, Inc., a non-profit corporation (the "Corporation").  (Compl. ¶¶ 40, 169.)   Mr. Cobb alleges Ernest Brede ("Mr. Brede"), Luis Contreras ("Mr. Contreras"), and others, improperly removed him from his position

---

[1]     On August 28, 2013, Plaintiff voluntarily dismissed his claims against Richard Ashe, Leon Fair, George Harper, Paul Koehler, Larry Laverdure, Michael Marchi, Bill MacKeon, Steve Misterfeld, Alan Shuster, Donald Showers III, Leonardo Trevino, and Priscilla Young. (*See* Docket No. 151.)

[2]     Mr. Cobb originally filed his Complaint on April 29, 2013.  (Docket No. 1.)  On May 6, 2013, before any of the Defendants moved to dismiss, he filed a "Notice of Errata," and attached an amended complaint to that document.  (Docket No. 5.)  The Court has construed that document as the operative complaint.

United States District Court
Northern District of California

an officer and director of the Corporation.  According to Mr. Cobb, this action was part of a scheme to assume the control of the property and assets of the Congregation, which is held by the Corporation, and as part of a money laundering scheme.  (*See, e.g., id.* ¶¶ 182-193.)  Mr. Cobb also alleges that Messrs. Brede and Contreras used his identity to open a bank account at JPMorgan, improperly added their names to existing bank accounts at Wells Fargo Bank ("Wells Fargo"), and removed Mr. Cobb as signatory on the accounts.  (*Id.* ¶¶ 186-187.)  Mr. Cobb alleges that bank records from JPMorgan will provide evidence of the alleged money laundering scheme. (*See, e.g., id.,* ¶ 220)

Mr. Cobb brought these concerns to the attention of the Menlo Park Police Department ("MPPD").  Mr. Cobb alleges that, upon learning of this report, Mr. Brede filed a police report with the MPPD, in which he falsely accused Mr. Cobb of stealing the Corporation's funds.  (*Id.* ¶¶ 194-196.)  The MPPD requested additional information from Mr. Cobb, but it did not act on his complaints.  (*Id.* ¶¶ 198-202, Ex. 7.)  Mr. Cobb also requested that the San Mateo County District Attorney's Office investigate the actions taken by Messrs. Brede and Contreras, but it declined to do so.  (*Id.* ¶ 203, Ex. 8.)  Mr. Cobb alleges that Mr. Smith, on behalf of the alleged RICO Enterprise, bribed members of the MPPD in order get the MPPD to halt the investigation and unduly influenced the San Mateo County District Attorney's office and caused it to decline to pursue an investigation.  (*Id.* ¶¶ 204-208, 210.)[3]

On May 23, 2011, Mr. Cobb filed a lawsuit against a number of his co-workers at Cisco Systems, Inc, which was assigned to Magistrate Judge Ryu ("Judge Ryu"), *Cobb v. Consunji*, N.D. Cal. Case No. 11-CV-2496 (hereinafter the "*Consunji* litigation").  The Cisco Defendants were not parties to that lawsuit.  The Morgan Lewis Defendants represented the defendants in the *Consunji*

---

[3]      Mr. Cobb also includes allegations regarding a lawsuit filed by Mr. Cobb., Sr. against Messrs. Brede and Contreras, in which Mr. Cobb, Sr. challenged his removal as an officer of the Corporation.  That case was assigned to Chief Magistrate Judge James ("Judge James"), *Cobb v. Brede*, N.D. Cal. Case No. 10-CV-3907 (hereinafter "*Brede I*").  Mr. Smith represented Messrs. Brede, and Contreras in *Brede I*.  (*Id.* ¶¶ 212-221.)  Mr. Cobb alleges that Mr. Smith and the Morgan Lewis Defendants conspired with members of Magistrate Judge James' staff to prepare fraudulent orders of dismissal.  Mr. Cobb also alleges that Mr. Sinclicito improperly obtained information from Mr. Cobb's computer at Cisco Systems.  (*Id.* ¶¶ 214-217; *see also id.* ¶¶ 219-221.)

United States District Court
Northern District of California

1    litigation.  (Compl. ¶¶ 222-225.)  Mr. Cobb alleges that Mr. Sinclito and Mr. Smith caused the

2    *Consunji* litigation to be dismissed by fraudulent means, in order to prevent JPMorgan and Wells

3    Fargo from producing documents pursuant to subpoena.  Mr. Cobb also allges that, after he

4    returned to work at Cisco, the Morgan Lewis Defendants instructed the Cisco Defendants to

5    "create an environment that would support the effort to pacify [Mr. Cobb] to the end of inducing

6    him to withdraw his appeal" in the *Consunji* litigation.  Mr. Cobb further alleges that the Cisco

7    Defendants began to increase his workload at or near deadlines connected with pending civil

8    litigation.  (*Id.*; *see also id.* ¶¶ 286-299, 304-306, Ex. 20.)

9         On September 2, 2011, Mr. Cobb filed a lawsuit in the Superior Court of the State of

10   California for the County of San Mateo, *Cobb v. Brede*, Civ. 508137 ("*Brede II*"), to challenge the

11   validity of appointing Mr. Brede and Mr. Contreras as directors and officers the Congregation.

12   (*Id.* ¶¶ 209, 226-227, Ex. 8.)  Mr. Cobb alleges that Mr. Smith, Mr. Sinclicito, Ms. Altamirano,

13   and Mr. L. Lee worked in concert to pressure him to withdraw a motion for a new trial in that

14   case.  (*Id.* ¶¶ 209, 231.)

15        During discovery in *Brede II* and the *Consunji* litigation, Mr. Cobb issued subpoenas to

16   JPMorgan, in an effort to obtain the bank records that Mr. Cobb alleges will contain evidence of

17   the money laundering scheme.  Mr. Cobb alleges that JPMorgan, in conjunction with other RICO

18   Defendants, has prevented him from obtaining access to those records.  (*Id.* ¶¶ 281-285.)

19        Mr. Cobb also recounts details relating to divorce proceedings, San Mateo Superior Court

20   Case No. 116981 ("the family law proceedings), in which Defendants Ron Nerio ("Mr. Nerio")

21   and BJ Fadem ("Mr. Fadem") represented Mr. Cobb.  Commissioner Greenberg presided over the

22   family law proceedings.  According to Mr. Cobb, the family law proceedings were part of the

23   alleged RICO Enterprise's efforts to harm him.  Mr. Cobb further alleges that Commissioner

24   Greenberg's decision to award Ms. Altamirano full physical custody could only have been thr

25   product of bribery or undue influence.  (*Id.* ¶¶ 232-240, 242-254, Ex. 10.)

26        On March 19, 2012, Mr. Cobb and Mr. Cobb, Sr. filed a lawsuit against many of the

27   defendants in this case.  *Cobb v. JPMorgan Chase*, 12-CV-1372-JSW (the "*JPMorgan*

28   litigation").  Mr. Cobb dismissed his claims in that case without prejudice, although he alleges that

United States District Court
Northern District of California

4

1    Mr. Altamirano and Ms. Altamirano were "directed by the Enterprise" to exert coercive pressure

2    in his family life so that he would withdraw the *JPMorgan* litigation.[4]  (*Id.* ¶¶ 299-301.)

3          Mr. Cobb also alleges the RICO Enterprise directed Ms. Altamirano to insitute a false

4    domestic violence complaint, in retaliation for actions that he had taken in the *JPMorgan*

5    litigation, which resulted in criminal charges being filed against him ("the criminal case").  Mr.

6    Bowman represented Mr. Cobb in the criminal case, and Ms. Freel was the defense investigator.

7    According to Mr. Cobb, the RICO Enterprise influenced Mr. Bowman and Ms. Freel to undermine

8    his defense.  (*Id.* ¶¶ 255-267, 346-347.)

9          Mr. Cobb also alleges that Ms. Altamirano, Mr. Maynor, Mr. Sinclicito and two doctors at

10   Stanford, "devised and executed a scheme to falsify medical records and to produce slanted input

11   by physicians to intentionally misrepresent and defame" him.  (*Id.* ¶ 268; *see generally id.* ¶¶ 269-

12   273-280.)  According to Mr. Cobb, these defendants engaged in this conduct in an effort to

13   prevent him from proceeding with the *JPMorgan* litigation, to undermine his position in the

14   *Consunji* litigation and the family law proceedings, and to support Ms. Altamirano's allegations in

15   the criminal case.  (*Id.* ¶¶ 272, 276-280, 307.)

16         In sum, Mr. Cobb's theory of the case is that the alleged RICO Enterprise has engaged in

17   an assault on him, which was designed to force him to dismiss or withdraw from the various civil

18   cases identified above and to discredit him so that he would not continue his efforts to expose the

19   alleged RICO Enterprises' activities.

20         Based on these and other allegations, which will be addressed as necessary, Mr. Cobb

21   asserts the following claims for relief: (1) violations of his rights under the Free Exercise Clause

22   of the First Amendment and the Equal Protection Clauses of the Fourteenth Amendment to the

23   United States Constitution, pursuant to 42 U.S.C. Section 1983 (the "Section 1983 claim") (*id.* ¶¶

24   366-404); (2) violations of the Racketeering Influenced Corrupt Organizations Act (the "Civil

25

26   _____

27   [4]     The Court dismissed Mr. Cobb, Sr.'s RICO claims on the basis that he failed to
     allege RICO injury and failed to allege facts supporting a predicate act.  *Cobb v. JPMorgan Chase*
28   *Bank, N.A.*, 2012 WL 5335309, at *4-*9 (N.D. Cal. Oct. 26, 2012).

1   RICO claim"), 18 U.S.C. Section 1692(c) (*id.* ¶¶ 419-484); (3) conspiracy to violate RICO (the

2   "RICO Conspiracy claim"), 18 U.S.C. Section 1962(d) (*id.* ¶¶ 485-491); (4) Slander (*id.* ¶¶ 492-

3   495); (5) Fraud (*id.* ¶¶ 496-503); and (6) Civil Conspiracy (*id.* ¶¶ 504-508).[5]

4                                        **ANALYSIS**

5   **A.    Applicable Legal Standards.**

6          A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to state a claim

7   upon which relief can be granted.  The complaint is construed in the light most favorable to the

8   non-moving party and all material allegations in the complaint are taken to be true.  *Sanders v.*

9   *Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986).  Mr. Cobb is proceeding pro se, and the Court must

10  construe pro se filings liberally.  *Zichko v. Idaho*, 247 F.3d 1015, 1020 (9th Cir. 2001).  Even

11  under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's

12  obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

13  conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell*

14  *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286

15  (1986)).

16         Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but

17  must instead allege "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.

18  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

19  draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.*

20  *Iqbal*, 556 U.S.662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is

21  not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant

22

23  [5]     Mr. Cobb also asserts a "claim" for "Serbian Collusion and Serbian Fraud," citing *Serbian*
    *Eastern Orthodox Diocese for the United States of America and Canada v. Milivojevich*, 426 U.S.
24  696 (1976).  (*Id.* ¶¶ 405-418).  In his opposition to the motion to dismiss filed by Mr. Brede, Mr.
    Contreras, Mr. Demosthenes, Mr. Douglas, Mr. A. Lee, Mr. L. Lee, Mr. Woodhams, Mr.
25  Yamaguchi, Mr. Nilges, Mr. Watson, and Mr. Maynor, Mr. Cobb acknowledges that this is not a
    true claim for relief.  Rather, he states that he asserted this "claim" to "preemptively mitigate[] and
26  counter[] Defendants' anticipated reliance" on *Serbian Eastern Orthodox*, and the principles cited
    therein, to defeat his claims against them.  Accordingly, the Court has not addressed it in this
27  Order.  The Court expresses no opinion on whether Mr. Cobb has asserted - or can assert - any
    state law claim against these Defendants or whether the principles expressed in *Serbian Eastern*
28  *Orthodox* would preclude such a claim.  The parties are free to renew these arguments if Mr. Cobb
    refiles his claims in state court.

United States District Court
Northern District of California

1  has acted unlawfully....  When a complaint pleads facts that are merely consistent with a

2  defendant's liability, it stops short of the line between possibility and plausibility of entitlement to

3  relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).  If the

4  allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment

5  would be futile.  *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook,*

6  *Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

7  **B.    Requests for Judicial Notice.**

8          JPMorgan, Dr. Kline, the Menlo Park Defendants, the Cisco Defendants, and Mr. Smith

9  filed requests for judicial notice in support of their motions.[6]  (Docket Nos. 33, 38, 41, 46, 48, 51.)

10  When the legal sufficiency of a complaint is tested by a motion to dismiss, review is limited to the

11  contents of the pleadings.  *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993).

12  However, a court "may consider unattached evidence on which the complaint necessarily relies if:

13  (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and

14  (3) no party questions the authenticity of the document."  *United States. v. Corinthian Colleges*,

15  655 F.3d 984, 999 (9th Cir. 2011) (internal quotations and citations omitted).  Furthermore,

16  pursuant to Federal Rule of Evidence 201, courts may take judicial notice of "'matters of public

17  record,'" but not of facts that may be "'subject to reasonable dispute.'"  *Id.* (citing *Lee v. City of*

18  *Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)).

19          These Defendants ask the Court to take judicial notice of court documents, including

20  docket reports, complaints, subpoenas, and orders from *Brede I*, the *Consunji* litigation, the family

21  law proceedings, and the *JPMorgan* litigation.  Mr. Cobb has not objected to the requests for

22  judicial notice.  The Court GRANTS the requests for judicial notice.

23  **C.    The Court Dismisses Claim Against the Superior Court Defendants.**

24          The only claim asserted against the Superior Court Defendants is the Section 1983 Claim.

25  (*See* Compl. ¶¶ 34-36, 103-104 (identifying Superior Court Defendants as "non-RICO

26  Defendants"); *see also* Docket No. 116, Opp. Br. at 9:1 ("state law claims for damages are not

27

28  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
   [6]     The Morgan Lewis Defendants cite to the Cisco Defendants' Request for Judicial Notice in
   their motion to dismiss.

United States District Court
Northern District of California

1    directed to the Superior Court Defendants.").)  The Superior Court Defendants move to dismiss on

2    the basis that this claim is barred by Eleventh Amendment Immunity as well as the doctrines of

3    judicial and quasi-judicial immunity.  Because the Court finds these arguments dispositive, the

4    Court does not reach the Superior Court Defendants's alternative arguments in favor of dismissal.

5        The Eleventh Amendment provides that "the Judicial power of the United States shall not

6    be construed to extend to any suit in law or equity, commenced or prosecuted against one of the

7    United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S.

8    Const. amend. XI.  "'The ultimate guarantee of the Eleventh Amendment is that nonconsenting

9    States may not be sued by private individuals in federal court.'"  *Beentjes v. Placer County Air*

10   *Pollution Control Dist.*, 397 F.3d 775, 777 (9th Cir. 2005) (quoting *Board of Trustees of*

11   *University of Alabama v. Garrett*, 531 U.S. 356, 363 (2001)).  The Section 1983 claim against the

12   Superior Court, which is a state agency, is barred by the Eleventh Amendment.  *See Greater Los*

13   *Angeles Council on Deafness v. Zolin*, 812 F.2d 1103, 1110 & n.10 (9th Cir. 1987).  The Section

14   1983 claim for damages against Commissioner Greenberg, in her official capacity, also is barred

15   by the Eleventh Amendment.  *See, e.g., Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71

16   (1989); *Los Angeles County Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992).

17       Commissioner Greenberg also argues that she is judicially immune from suit.  "[J]udicial

18   immunity is an immunity from suit, not just from ultimate assessment of damages."  *Mireless v.*

19   *Waco*, 502 U.S. 9, 11 (1991); *see also Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978).  An act is

20   considered "judicial" when it is a function normally performed by a judge and the parties dealt

21   with the judge in his or her judicial capacity.  *See Stump*, 435 U.S. at 362.  Allegations of

22   conspiracy do not defeat such immunity.  *Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir. 1986)

23   (en banc).  "Judicial immunity applies 'however erroneous the act may have been, and however

24   injurious in its consequences it may have proved to the plaintiff.'"  *Id.* at 1075 (quoting

25   *Cleavinger v. Saxner*, 474 U.S. 193, 199-200 (1985)).  A judge lacks immunity only when he or

26   she acts "in the clear absence of all jurisdiction ... or performs an act that is not 'judicial' in

27   nature."  *Ashelman*, 793 F.2d at 1075 (internal quotations and citation omitted).

28       To determine if an individual acted in an official judicial capacity, a court must analyze

United States District Court
Northern District of California

8

whether: "(1) the precise act is a normal judicial function; (2) the events occurred in the judge's chambers; (3) the controversy centered around a case then pending before the judge; and (4) the events at issue arose directly and immediately out of a confrontation with the judge in his or her official capacity." *Id.* at 1075-76 (citation omitted). Having carefully reviewed the allegations in Mr. Cobb's Complaint, the Court concludes that each of the four factors set forth above demonstrate that the allegations against Commissioner Greenberg arise from judicial acts, such as issuing orders and conducting court proceedings in the family law proceedings. Moreover, to the extent Mr. Cobb alleges that Commissioner Greenberg acted in excess of all jurisdiction, his allegations are conclusory and speculative in nature and are insufficient to state a claim.

Mr. Estrada also argues that he is entitled to quasi-judicial immunity. The Ninth Circuit has held that certain officers of the court, including court counselors, have absolute immunity when performing quasi-judicial functions in damages actions. *See, e.g., Meyers v. Contra Costa County Dep't of Social Services*, 812 F.2d 1154, 1158-59 (9th Cir. 1987). Quasi-judicial functions include those activities coordinated with a judge and court proceedings. *Moore v. Brewster*, 96 F.3d 1240, 1244-45 (9th Cir. 1996), *superseded by statute on other grounds*; *Mullis v. United States Bankruptcy Court for the District of Nevada*, 828 F.2d 1385, 1390 (9th Cir. 1996). Allegations of conspiracy do not defeat such immunity and immunity will apply "'however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff.'" *Ashelman*, 793 F.2d at 1075 (quoting *Cleavinger*, 474 U.S. at 199-200); *cf. Demoran v. Witt*, 781 F.2d 155, 158 (9th Cir. 1985).

The Court has reviewed the allegations in the Complaint, which show that the claims against Mr. Estrada arise from his preparation and submission of a recommendation regarding custody and visitation. (*See, e.g.,* Compl. ¶ 103, 238-240, 243, 245, Exs. 10.) Those actions arose out of contact between Mr. Cobb and Mr. Estrada during the course of the family law proceedings and out of Mr. Estrada's responsibility to the court in that case. *See, e.g., Meyers*, 812 F.2d at 1158-59 (finding that court counselors were entitled to quasi-judicial immunity where "controversy involved a pending case to which they had been assigned, and the events at issue arose directly and immediately out of a confrontation between the defendants and parties in that

United States District Court
Northern District of California

1    case"). Further, the allegations of conspiracy, which are conclusory and speculative in nature, do

2    not alter the Court's analysis.

3          For each of these reasons, the Court GRANTS the Superior Court Defendants' motion to

4    dismiss.

5    **D.    The Court Dismisses the Federal Claims Against the San Mateo County Defendants.**

6          **1.    San Mateo County.**

7          San Mateo County aruges that the allegations against it are no more than bare legal

8    conclusions, unsupported by facts. It also argues that, to the extent Mr. Cobb does allege facts,

9    they are insufficient to state a claim. Upon a review of Mr. Cobb's Complaint, the Court agrees.

10   The only San Mateo County employee about whom Mr. Cobb complains is Mr. Wagstaffe. A

11   municipality cannot be found liable under Section 1983 on a respondeat superior theory. *See*

12   *Monell v. N.Y. Dept. of Soc. Serv.*, 436 U.S. 658, 694 (1978). Municipal liability can be imposed

13   only for injuries inflicted pursuant to an official governmental policy or custom. *Id.* at 690-94. A

14   county can be found liable when the execution of a county policy, whether made by its lawmakers

15   or those whose acts can be said to represent official policy or custom of the county, inflicts the

16   injury. *Id.* at 694. While a single decision may satisfy *Monell*'s municipal policy requirement,

17   that decision must have been made by one of the municipality's authorized decisionmakers, *i.e.* by

18   an official who "possesses final authority to establish municipal policy with respect to the

19   challenged action." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-81 (1986).

20         To hold a local government liable for an official's conduct, a plaintiff must first establish

21   that the official (1) had final policymaking authority concerning the action alleged to have caused

22   the particular constitutional or statutory violation at issue and (2) was the policymaker for the local

23   governing body for purposes of the particular act. *McMillian v. Monroe County Alabama*, 520

24   U.S. 781, 785 (1997). The Supreme Court instructed courts to look to state law to determine

25   whether an official is the policymaker for the local government or the state for purposes of a

26   particular act. *Id.* at 786. Applying that test, the Ninth Circuit has held that in California, a

27   district attorney acts as a state official, and not a county official, when he decides to proceed with

28   a criminal prosecution. *Weiner v. San Diego County*, 210 F.3d 1025, 1028 (9th Cir. 2000).

United States District Court
Northern District of California

10

Therefore, Mr. Cobb's Section 1983 claim against San Mateo County fails because the State, and not the County, was the actor.  *See id.* at 1031.

Mr. Cobb did not expressly identify San Mateo County as a RICO Defendant, but he argues in opposition that this was an oversight.  The putative oversight does not assist Mr. Cobb, because a government entity is "'incapable of forming [the] malicious intent necessary' to support a RICO action."  *Pedrina v. Chun*, 97 F.3d 1296, 1300 (9th Cir. 1996) (quoting *Lancaster Community Hosp. v. Antelope Valley Hosp.*, 940 F.2d 397, 404 (9th Cir. 1991)).

### 2.    Mr. Wagstaffe.

Mr. Wagstaffe moves to dismiss the Section 1983 claim on the basis of absolute prosecutorial immunity from suit.  Absolute or "quasi-judicial" immunity protects a prosecutor from civil, monetary liability for injuries that arise out of the prosecutor's execution of duties that are "intimately associated with the judicial phase of the criminal process."  *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976).  The immunity is quasi-judicial because it protects prosecutors when they make discretionary judgments, similar to those made by a judge, on the basis of evidence presented to them.  *Id.* at 423 n. 20.

Prosecutors who seek absolute immunity bear the burden of proof, and they enjoy a presumption of qualified rather than absolute immunity.  *Buckley v. Fitzsimmons,* 509 U.S. 259, 268-69 (1993); *Imbler*, 424 U.S. at 430.  Absolute immunity only applies to a prosecutor's "special functions," *i.e.* those functions closely associated with the prosecutor's duties as an advocate for the State.  *Id.*  The inquiry into which functions are prosecutorial, and thus immune, focuses on the nature of the function performed rather than the identity of the actor who performed it.  *Buckley*, 509 U.S. at 269.  Nor should any weight be given to prosecutorial intent in the immunity inquiry.  *Ashelman*, 793 F.2d at 1078.  The issue is not the harm that the conduct may have caused, but the nature of the conduct for which immunity is claimed.  *Buckley*, 509 U.S. at 271. So long as the prosecutor is acting in his role as an advocate for the State, his actions are protected, even if his actions are malicious or dishonest.  *Imbler*, 424 U.S. at 428.

It is well-established that a prosecutor is absolutely immune for initiating a prosecution and presenting the State's case.  *Id.* at 431.  In addition, a prosecutor is absolutely immune when

United States District Court
Northern District of California

11

1    deciding whether or not to prosecute a case.  *Roe v. City and County of San Francisco*, 109 F.3d

2    578, 583 (9th Cir. 1997).  A prosecutor's immunized duties will involve actions preliminary to the

3    initiation of a prosecution and acts apart from the courtroom.  *Imbler*, 424 U.S. at 431 n. 33.  The

4    allegations against Mr. Wagstaffe are all based on the decision to not initiate a prosecution against

5    Messrs. Brede and Contreras, a conclusion that is reinforced by statements in Mr. Cobb's

6    opposition to the San Mateo County Defendants' motion.  (*See, e.g.*, Compl. ¶¶ 37-38, 210, Ex. 8;

7    Docket No. 70 at 7:25-8:6, 10:8-10.)

8           Accordingly, for each of these reasons, the Court GRANTS the San Mateo County

9    Defendants' motion to dismiss the Section 1983, the Civil RICO, and the RICO Conspiracy

10   claims.

11   **E.     The Court Dismisses the Section 1983 Claim.**

12          Mr. Cobb also asserts his Section 1983 claim against Ms. Altamirano, Ms. Appel, Mr.

13   Bowman, Ms. Freel, Mr. Jonsen, and Mr. Otaki.  In order to state a claim under Section 1983, a

14   plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of

15   the United States was violated and (2) that the alleged violation was committed by a person acting

16   under the color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Ketchum v. Alameda*

17   *County*, 811 F.2d 1243, 1245 (9th Cir. 1987).

18          **1.     Ms. Appel, Mr. Bowman, and Ms. Freel.**

19          Ms. Appel, Mr. Bowman, and Ms. Freel argue that Mr. Cobb has not alleged facts that

20   show they were acting under the color of state law.  Mr. Cobb concedes that each of these

21   Defendants were not state actors and did not act under color of state law at any time.  He argues,

22   however, that he can cure this defect by amending his complaint.  (See Docket No. 58 at 4:17-20,

23   Docket No. 78 at 5:13-16, and Docket No. 105 at 5:9-11.)

24          Accordingly, the Court GRANTS, IN PART, the motions to dismiss filed by Mr. Appel,

25   Mr. Bowman, and Ms. Freel.  Based on Mr. Cobb's concession and based on his statement that,

26   "at no time," were these Defendants state actors, the Court dismisses the Section 1983 claim

27   against these Defendants, and it denies Mr. Cobb leave to amend.

28   //

United States District Court
Northern District of California

United States District Court
Northern District of California

2.      **Mr. Jonsen and Mr. Ohtaki.**

Mr. Jonsen and Mr. Ohtaki argue that there are no factual allegations to support a Section 1983 claim against them.  Mr. Cobb concedes that the Section 1983 Claim should be dismissed against these two Defendants, and he states that he would not seek to amend this claim as to these two Defendants.  (Docket No. 71 at 5:13-16.)  Accordingly, the Court GRANTS, IN PART, the motion to dismiss filed by Mr. Johnson and Mr. Ohtaki, and it dismisses the Section 1983 Claim against these defendants, and it denies Mr. Cobb leave to amend.

3.      **Jennifer Altamirano.**

Ms. Altamirano also argues that Mr. Cobb has not alleged fact showing that she is a state actor.  Generally, private parties do not act under color of state law.  *Price v. Hawaii*, 939 F.2d 702, 707-08 (9th Cir. 1991).  Therefore, a plaintiff must allege facts that tend to show that the private party's conduct has caused a deprivation of federal rights that may be fairly attributable to the State.  *Id.* at 708 (holding that "conclusionary allegations of action under color of state law, unsupported by facts, will be rejected as insufficient to state a claim") (quoting *Jones v. Community Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (internal quotations and brackets omitted).

A two-part test exists to determine whether private-party action causes a deprivation that occurs under color of state law.  *Lugar v. Edmonson Oil Co.,* 457 U.S. 922, 937 (1982).  First, the deprivation must be caused by the exercise of some right or privilege created by the State; by a rule of conduct imposed by the State; or by a person for whom the State is responsible.  *Id.* Second, the party charged with the deprivation must be a state actor.  *Id.*  A person may become a state actor by performing a public function or being regulated to the point that the conduct in question is practically compelled by the State.  *Vincent v. Trend Western Technical Corp.*, 828 F.2d 563, 569 (9th Cir. 1987).  The Supreme Court also has noted that, if engaged jointly with state officials with respect to a challenged action, private persons are acting under color of law for Section 1983 purposes.  *Dennis v. Sparks*, 449 U.S. 24, 28; *see also Kimes v. Stone*, 84 F.3d 1121, 1129 (9th Cir. 1996); *Price*, 939 F.2d at 708.

For example, in *Kimes*, the plaintiff alleged that a group of attorney defendants conspired

with a state court judge by entering into a private extra-judicial agreement to transfer a case from one judge to the judge that allegedly was part of the conspiracy. That transfer allegedly resulted in a ruling that was fraudulent, without jurisdiction, and which allegedly deprived the plaintiff of a property interest in an estate. *Kimes*, 84 F.3d at 1124-1125. The Ninth Circuit reversed the trial court's decision to dismiss the private parties. However, the facts in *Kimes* are distinguishable. There, the plaintiff attached to the complaint a letter between the attorney defendants, which circulated a ruling that purportedly was to have been drafted by the transferee judge and which was substantially similar to the ruling ultimately issued by the judge. *Id.* at 1125.

In contrast, the allegations against Ms. Altamirano show only that she initiated the family law proceedings and the complaint which gave rise to the criminal case against Mr. Cobb. (*See, e.g.,* Compl. ¶¶ 366, 368.) The invocation of "state legal procedures does not constitute 'joint participation' or 'conspiracy' with state officials sufficient to satisfy section 1983's state action requirement." *Schucker v. Rockwood*, 846 F.2d 1202, 1205 (9th Cir. 1988); *Price*, 939 F.2d at 708 (noting that "a person may become a state actor by conspiring with a state official" but that "'merely resorting to the courts ... does not make a party a co-conspirator or a joint actor with the judge'") (quoting *Dennis*, 449 U.S. at 28). Further, Mr. Cobb's allegations of a conspiracy are conclusory and speculative. The Court concludes Mr. Cobb has not stated facts to show that Ms. Altamirano acted under color of state law.

Accordingly, the Court GRANTS, IN PART, Ms. Altamirano's motion to dismiss. The Court shall address Mr. Cobb's right to amend this claim in Section G of this Order.

**F.    The Court Dismisses the Civil RICO and the RICO Conspiracy Claims.**

Mr. Cobb also asserts Civil RICO and RICO Conspiracy Claims against the "RICO Defendants," and he alleges that the predicate acts supporting these claims include bank fraud, bribery, extortion, obstruction of justice, mail fraud, money laundering, and wire fraud. (Compl. ¶¶ 419-484.) Under 18 U.S.C. Section 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." It also is

United States District Court
Northern District of California

1   "unlawful for any person to conspire to violate any of the provisions of the subsections (a), (b), or

2   (c) of this section."  18 U.S.C. § 1962(d).

3       In order to state a Civil RICO claim, Mr. Cobb must allege facts showing: "'(1) conduct

4   (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5)

5   causing injury to plaintiff's 'business or property.'" *Living Designs, Inc. v. E.I. Dupont de*

6   *Nemours and Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (quoting *Grimmett v. Brown*, 75 F.3d 506,

7   510 (9th Cir.1996), in turn citing 18 U.S.C. §§ 1964(c), 1962(c)).  In order to state a claim for

8   RICO conspiracy, Mr. Cobb must allege that a person conspired to violate section 1962(c), and

9   that he suffered RICO injury by reason of overt acts, which constitute predicate acts under the

10  RICO statute, in furtherance of the conspiracy.  *See, e.g, Reddy*, 912 F.2d at 295.

11      The RICO Defendants who have moved to dismiss argue, *inter alia*, that Mr. Cobb fails to

12  allege sufficient facts to allege a pattern of racketeering activity, *i.e.*, he fails to allege facts

13  supporting the alleged predicate acts, and fails to allege "RICO injury." [7]  Dr. Kline also argues

14  that  he is entitled to quasi-judicial immunity.  The Menlo Park Defendants also argue that Menlo

15  Park is incapable of forming the requisite intent to violate RICO and that Mr. Cobb does not

16  include facts against Mr. Jonsen or Mr. Ohtaki.

17      **1.      Dr. Kline.**

18      Dr. Kline argues that he is protected by the doctrine of quasi-judicial immunity.  On June

19  20, 2012, Commissioner Greenberg appointed Dr. Kline to do a "full custody evaluation and

20  psychological testing," in the family law proceedings.  (Docket No. 38, Request for Judicial

21  Notice ("Kline RJN"), Ex. A.)  As set forth above, the Ninth Circuit has held that certain officers

22  of the court have absolute immunity when performing quasi-judicial functions in damages actions.

23

24  _____

[7]      The RICO Defendants who have appeared in this action are: Mr. Altamirano, Mrs.
25  Altamirano, Ms. Altamirano, Ms. Appel, Mr. Bowman, Mr. Brede, Mr. Contreras, Mr.
    Demosthenes, Mr. Douglas, Mr. Fadem, Ms. Freel, Mr. Jonsen, Mr. Kitagawa, Dr. Kline, Ms.
26  Lappin, Lawrence Lee, Allen Lee, Mr. Nerio, Mr. Nilges, Mr. Ohtaki, Ms. Perdue, Mr. Sinclicito,
    Mr. Smith, Mr. Wagstaffe, Mr. Watson, Mr. Woodhams, Mr. Yamaguchi, JPMorgan, Morgan
27  Lewis, and Stanford.

        The RICO Defendants who have not yet appeared are:  Mr. Ferris, Mr. Pierce, and Mr.
28  Raditich, and the Santa Clara County District Attorney's Office.

United States District Court
Northern District of California

1   *Meyers*, 812 F.2d at 1158-59.  Quasi-judicial functions include those activities coordinated with a

2   judge and court proceedings.  *Moore*, 96 F.3d at 1244-45.  Allegations of conspiracy do not defeat

3   such immunity and immunity will apply "'however erroneous the act may have been, and however

4   injurious in its consequences it may have proved to the plaintiff.'"  *Ashelman*, 793 F.2d at 1075

5   (quoting *Cleavinger*, 474 U.S. at 199-200); *cf. Demoran*, 781 F.2d at 158.

6         Mr. Cobb concedes that the doctrine of quasi-judicial immunity bars the RICO claim

7   against Dr. Kline.  (Docket No. 60, Opp. Br. at 6:1-3.)  Based on the Court's review of the

8   Complaint, the allegations against Dr. Kline arise from his preparation and submission of the

9   custody and psychological evaluation, describe the contact between Mr. Cobb and Dr. Kline

10   during those proceedings, and out arise out of Dr. Kline's responsibility to the court in those

11   proceedings.  (Compl. ¶¶ 59-62, 442-443; Kline RJN, Ex. A.).

12         Accordingly, the Court GRANTS, IN PART, Dr. Kline's motion to dismiss.  *See Meyers*,

13   812 F.2d at 1158-59.  Mr. Cobb argues that he can amend his complaint to assert constitutional

14   claims against Dr. Kline.  The Court shall address whether Mr. Cobb should be granted leave to

15   amend in Section G of this Order.

16         **2.**        **The Menlo Park Defendants.**

17         Menlo Park moves to dismiss the RICO claims on the basis that it is not capable of

18   forming the requisite intent to commit the predicate acts alleged in the Complaint.  A government

19   entity is "'incapable of forming the [malicious] intent necessary' to support a RICO action."

20   *Pedrina*, 97 F.3d at 1300 (quoting *Lancaster Community Hosp.*, 940 F.2d at 404).  Upon review of

21   the Complaint, Mr. Cobb includes no factual allegations against Mr. Jonsen or Mr. Ohtaki.

22         Accordingly, for these reasons, the Court GRANTS, IN PART, the motion to dismiss filed

23   by the Menlo Park Defendants.  The Court addresses whether Mr. Cobb should be granted leave to

24   amend this claim in Section G of this Order.

25         **3.**        **RICO Injury.**

26         An essential element of a RICO claim is injury to a plaintiff's business or property.  In

27   order to determine whether Mr. Cobb has alleged facts that are sufficient to show RICO injury, the

28   Court looks to whether he has shown "harm to a specific business or property interest - a

categorical inquiry typically determined by reference to state law." *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005); *see also Newcal Industries, Inc. v. Ikon Office Solution*s, 513 F.3d 1038, 1055 (9th Cir. 2008) ("injury is compensable under RICO if the injury constitutes 'harm to a specific business or property interest' and if the alleged business or property interest is cognizable under state law").  Mr. Cobb must show "some tangible financial loss" connected with the harm to his business or property interest.  *Diaz*, 420 F.3d at 900; *see also Canyon County v. Sygenta Seeds*, Inc., 519 F.3d 969, 975 (9th Cir. 2008).  Finally, the Supreme Court has made clear that a "plaintiff is required to show that a RICO predicate offense 'not only was a but for cause of his injury, but was the proximate cause as well.'"  *Hemi Group, LLC v. City of New York, New York*, 559 U.S. 1, 10 (2010) (quoting *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992)).

In his RICO Conspiracy claim, Mr. Cobb alleges that he has "incurred … pecuniary damages pursuant to acts of honest services fraud on the part of" Mr. Bowman, Mr. Fadem, Ms. Freel, and Mr. Nerio.  (Compl. ¶ 490.)  In his supplemental brief on this issue, Mr. Cobb argues that he has alleged RICO Injury because: (1) he is now unemployed and will have difficulty obtaining employment as a result of the RICO Defendants' conduct (Docket No. 155, Cobb Supp. Br. at 8:2-10); and (2) the RICO Defendants' conduct interfered with the various lawsuits referenced in the Complaint (*id.* at 8:19-11:16).[8]  In addition, Mr. Cobb alleges that he has been "injured in [his] property, including pecuniary damages consisting of legal fees and costs forced upon [him] due to Jennifer Altamirano's acts of fraud and malicious prosecution which have prompted" the family law proceedings and the criminal case, which includes the payment of an attorneys' fee award to Ms. Altamirano.[9]  (*See* Compl. ¶ 490.) The Court examines each of these arguments in turn.

//

---

[8]     Because Mr. Cobb was not a party to the *Brede I*, he cannot rely on that case to establish RICO injury.

[9]     Mr. Cobb expressly disclaims reliance on a theory that he incurred attorneys' fees in connection with the *Consunji* and *JPMorgan* litigation.  (*See* Cobb Supp. Br. at 4:1-3.)

United States District Court
Northern District of California

### a.      Honest Services.

The "the deprivation of 'honest services' does not constitute concrete financial loss [sufficient to establish injury to state a RICO claim]."  *United States v. Kincaid-Chauncey,* 556 F.3d 923, 941 n.14 (9th Cir. 2009) (quoting *Ove v. Gwinn,* 264 F.3d 817, 825 (9th Cir. 2001) (brackets as in *Kincaid-Chauncey*).  Accordingly, Mr. Cobb cannot establish RICO injury based on this theory.

### b.      Loss of Employment.

With respect to his employment status, Mr. Cobb attempts to analogize himself to the plaintiff in the *Diaz* case.  There, the plaintiff asserted a civil RICO claim, based on allegations that he was a victim of the Los Angeles Police Department's ("LAPD") "Rampart" scandal. According to the plaintiff, members of the LAPD fabricated evidence to show he committed assault with a deadly weapon, tampered with witnesses, and conspired to falsely convict him.  The plaintiff argued that he suffered RICO injury, because he lost employment opportunities while he was incarcerated on the charges and while he attempted to defend against the charges.  *Diaz*, 420 F.3d at 898.  The district court dismissed and concluded that the plaintiff lacked standing to establish a RICO violation, because he failed to allege injury to business or property.  The Ninth Circuit reversed.

The *Diaz* court reasoned that "[t]he harms [the plaintiff] alleges amount to intentional interference with contract and interference with prospective business relations, both of which are established torts under California law." *Id.* at 900.  Because the plaintiff "could not fulfill his employment contract or pursue valuable employment opportunities because he was in jail," the court found that the plaintiff "alleged both the property interest and the financial loss," necessary to show injury to business or property. *Id.*  However, unlike the plaintiff in *Diaz* who alleged concrete financial loss, Mr. Cobb merely argues that he now is unemployed and because of the criminal case *might* not be able to obtain employment.  These allegations are not contained in the Complaint.  However, even if they were, these allegations would be insufficient to constitute RICO injury because the link between the conduct and the alleged injury "is 'too remote,' 'purely contingent,'" and "indirect." *Hemi Group*, 559 U.S. at 10 (quoting *Holmes*, 503 U.S. at 271).

1

c.      **Interference in Lawsuits.**

2      Mr. Cobb also argues that he demonstrates RICO injury based the alleged loss of various

3 causes of action.  For example, he alleges that the RICO Defendants' conduct caused the *Consunji*

4 litigation to be fraudulently dismissed and forced him to dismiss his appeal in that case, forced

5 him to abandon his motion for a new trial in *Brede II*, and forced him to dismiss his claims in the

6 *JPMorgan* chase litigation.  In support of this theory, Mr. Cobb relies heavily on *Malley-Duff &*

7 *Associates, Inc. v. Crown Ins. Co.*, 792 F.2d 341 (3rd Cir. 1986).

8      In that case, the court noted that a cause of action "is a form of 'property'[.]"  *Id.* at 354;

9 *see also Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982) ("[A] cause of action is a

10 species of property protected by the Fourteenth Amendment Due Process Clause."); *Parker v.*

11 *Walker*, 5 Cal. App. 4th 1173, 1182-83 (1992) (citing, *inter alia*, Cal. Civ. Code §§ 663, 953)

12 (cause of action to recover money damages is a form of property under California law).  The

13 plaintiff alleged, as RICO predicate acts, that the defendants obstructed justice during the

14 discovery phase of a related case by intimidating the trial judge, plaintiff's counsel and witnesses,

15 by destroying evidence, and by suborning perjury.  *Id.* at 355.  In concluding that the plaintiff

16 alleged RICO injury, the *Malley-Duff* court reasoned that, when the cause of action "arises out of

17 the termination of a business, we think it is not unfair to characterize conduct tending to impair it

18 as a 'business injury.'"  *Id.* at 354.  The court then found that plaintiff's "allegations of great

19 expenses, delays and inconvenience ... in its prosecution of the [lawsuit] were a sufficient pleading

20 of injury to business or property to" establish RICO injury.  *Id.* at 355 (internal quotation marks

21 omitted).

22      Mr. Cobb's theory of RICO injury is not without support within the Ninth Circuit.  *See*

23 *Miller v. Glen & Helen Aircraft*, 777 F.2d 496, 498-99 (9th Cir. 1985).  In *Miller*, the plaintiff

24 brought a Civil RICO claim and alleged, as predicate acts, that the defendants had influenced and

25 bribed witnesses and obstructed justice in a prior case.  The plaintiff had received a settlement in

26 the prior litigation and, as a result of the defendant's conspiracy to interfere with the plaintiff's

27 witnesses, "a portion of the insurance proceeds available ... went to pay [a co-defendant's]

28 investigative fees thereby depleting the final settlement amount" paid to the plaintiff.  *Id.* at 499.

*United States District Court*
*Northern District of California*

19

1    On those facts, the court concluded that the plaintiff sufficiently alleged RICO injury.  *Id.*

2         Unlike the *Malley-Duff* case, none of the cases referenced in his Complaint involve an an

3    alleged injury to Mr. Cobb's business.  In addition, unlike the plaintiffs in the *Miller* and *Malley-*

4    *Duff* cases, Mr. Cobb did not seek any form of monetary recovery in *Brede II*.  The only cases

5    referenced in the Complaint that might possibly support RICO injury on this theory are the

6    *Consunji* litigation and the *JPMorgan* litigation.  With respect to the latter case, Mr. Cobb has

7    essentially renewed all of the claims he previously asserted in that case in this case.  Thus, he has

8    not shown how the RICO Defendants' conduct resulted in a loss or injury to the underlying causes

9    of action.  Moreover, unlike the *Miller* case, where the defendants' conduct resulted in a concrete

10   financial injury, Mr. Cobb did not recover any money, either following a trial or by way of

11   settlement in the *Consunji* or *JPMorgan* litigation.  *See, e.g., Chaset v. Fleer/Skybox, Int'l*, 300

12   F.3d 1083, 1086-87 (9th Cir. 2002) ("To demonstrate injury for RICO purposes, plaintiffs must

13   show proof of concrete financial loss, and not mere injury to a valuable intangible property

14   interest.").

15        The Court concludes that these allegations are insufficient to establish RICO injury.

16              **d.    Fees and Costs in Family Law and Criminal Proceedings.**

17        Mr. Cobb also argues and alleges that he incurred legal fees and other expenses in

18   connection with the family law and the criminal proceedings.  Although the Ninth Circuit has not

19   yet recognized incurring legal fees as as a form of RICO Injury, *see, e.g., Thomas v. Baca*, 308

20   Fed. Appx. 87, 88 (9th Cir. 2009), some district courts within the Ninth Circuit have concluded

21   that incurring legal fees may qualify as RICO Injury.  *See, e.g., Dunmore v. Dunmore*, 2013 WL

22   5569979, at *6-*7 (E.D. Cal. Oct. 9, 2013); *Burger v. Kuimelis*, 325 F. Supp. 2d 1026, 1035-36

23   (N.D. Cal. 2004) (citing *Handeen v. Lemaire*, 112 F.3d 1339, 1354 (8th Cir. 1997) and *Stochastic*

24   *Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1166-67 (2d Cir. 1993)).

25        In general, in cases where courts have concluded that incurring legal fees is sufficient to

26   allege RICO injury, they have done so when the fees incurred were proximately caused by conduct

27   that would qualify as a RICO predicate act.  *See, e.g., Dunmore*, 2013 WL 5569979, at *7 (finding

28   link between plaintiff's injury and alleged conduct too remote to confer RICO standing); *Burger,*

United States District Court
Northern District of California

20

1   325 F. Supp. 2d at 1035 (finding that plaintiff had not adequately alleged RICO injury but finding

2   that amendment would not be futile).

3        For reasons discussed below, the Court concludes that even if incurring legal fees could be

4   sufficient to state RICO injury, Mr. Cobb has not alleged facts showing that a predicate act caused

5   him to incur those fees.

6        **4.    Predicate Acts.**

7             **a.    Bank Fraud, 18 U.S.C. Section 1344.**

8        Mr. Cobb supports the Civil RICO claim with allegations that the RICO Defendants

9   engaged in bank fraud, set forth in two counts.  (Compl. ¶¶ 423-428.)  In order to allege bank

10  fraud, Mr. Cobb must allege that the RICO Defendants "execute[d], or attempt[ed] to execute, a

11  scheme or artifice – (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds,

12  credits, assets, securities, or other property owned by, or under the custody or control of, a

13  financial institution, by means of false or fraudulent pretenses, representations, or promises...."  18

14  U.S.C. § 1344 (emphasis added).  "'It is the financial institution itself ... that is the victim of the

15  fraud the statute proscribes.'"  *United States v. Molinaro*, 11 F.3d 853, 857 (9th Cir. 1993)

16  (quoting *United States v. Saks*, 964 F.2d 1514, 1518 (5th Cir. 1992)).

17       Mr. Cobb does not allege that JPMorgan or Wells Fargo were the intended victims of the

18  RICO Defendants' purported scheme.  Rather, Mr. Cobb alleges that the RICO Defendants were

19  trying to prevent him from obtaining bank records.  (Compl. ¶¶ 423-428.)  Although Mr. Cobb

20  cites cases in his Complaint that support the proposition that a bank need not suffer actual loss to

21  support a conviction for bank fraud, he still does not include allegations that the *banks* were the

22  intended victims of the alleged bank fraud.  (*See* Compl. ¶ 426, citing *United States v. Lemons*,

23  941 F.2d 309 (5th Cir. 1991) and *United States v. Briggs*, 965 F.2d 10 (5th Cir. 1992).)

24       The Court concludes that Mr. Cobb has not alleged facts showing that any of the RICO

25  Defendants engaged in bank fraud as a predicate act to support the Civil RICO claim.

26             **b.    Bribery, 18 U.S.C. Section 201.**

27       Mr. Cobb also supports his Civil RICO claim with allegations of bribery, set forth in three

28  counts, which incorporate by reference all previous allegations.  (Compl. ¶¶ 429-432.)  By way of

United States District Court
Northern District of California

1   example, Mr. Cobb alleges on "information and belief" that Mr. Smith "delivered [a] payoff to

2   [MPPD] representatives" to cause them to stop the investigation of alleged identity theft and

3   money laundering.  (*Id.* ¶¶ 204-205; *see also id.* ¶¶ 208, 210.)  Mr. Cobb also alleges that

4   "Enterprise members including but not limited to Defendants Altamirano, Maynor and Raditich, in

5   exchange for something of value in violation of both federal and state law," unduly influenced

6   Commissioner Greenberg to render decisions favorable to Ms. Altamirano.  (*Id.* ¶ 430; *see also id.*

7   ¶ 246.)  Mr. Cobb, incorporating by reference earlier allegations, also alleges that Mr. Bowman,

8   Ms. Freel, Mr. Fadem, and Mr. Nerio were bribed to violate their fiduciary duty to him.  (*Id.* ¶¶

9   431-432.)

10          Mr. Cobb's allegations regarding bribes by Mr. Smith to the MPPD and the alleged bribes

11   to Commissioner Greenberg are unsupported by facts.  Moreover, his allegation that

12   Commissioner Greenberg was "entirely compromised pursuant to bribery is clearly inferred by

13   virtue of her continuance decisions in defiance of law, material facts and rason making her recusal

14   long overdue," is conclusory and speculative.  (*Id.* ¶ 430.)  It is equally plausible to infer that

15   Commissioner Greenberg's rulings were legitimate and that the MPPD decided not to proceed

16   with the investigation because it lacked evidence to do so.  With respect to Mr. Bowman, Ms.

17   Freel, Mr. Nerio and Mr. Fadem the allegations of bribery also are no more than bare legal

18   conclusions unsupported by facts.  (*See, e.g.,* Compl. ¶¶ 29-30, 256-257.)

19          The Court concludes that Mr. Cobb has not alleged facts showing that any of the RICO

20   Defendants engaged in bribery as a predicate act to support the Civil RICO claim.

21                    **c.     Extortion, California Penal Code Section 518.**

22          Mr. Cobb also supports his Civil RICO claim with seven "counts" of extortion, in violation

23   of Calfirornia Penal Code Section 518.  (Compl. ¶¶ 435-445.)  Section 518 provides that

24   "[e]xtortion is the obtaining of property from another, with his consent, or the obtaining of an

25   official act of a public officer, induced by a wrongful use of force or fear, or under color of official

26   right."  Mr. Cobb's alleges that specific RICO Defendants tried to force him to disengage from

27   *Brede II*, and the *Consunji* and *JPMorgan* litigation.

28          By way of example, Mr. Cobb alleges that Ms. Altamirano left the marriage with the intent

to "disrupt and distract" him at a time when the motion for a new trial was due in *Brede II*, and that Mr. Altamirano stated that "the sudden family issues stemmed from the legal cases and that things would get better once all of the cases went away." Mr. Altamirano also allegedly expressed "uncertainty regarding whether … [Ms. Altamirano]… would return home with the children as long as the cases continued." (Compl. ¶¶ 437-438; *see also id.* ¶ 439.) These allegations do not show that any of the RICO Defendants' efforts were designed to obtain property from Mr. Cobb. Nor has he alleged facts showing that they obtained "an official act of a public officer." Cal. Pen. Code § 518.

The Court concludes that Mr. Cobb has not alleged facts showing that any of the RICO Defendants engaged in extortion as a predicate acts to support the Civil RICO claim.

### d.     Obstruction of Justice, 18 U.S.C. Section 1503.

Mr. Cobb also supports his Civil RICO claims with allegations of obstruction of justice, in violation of 18 U.S.C. section 1503. (Compl. ¶¶ 446-452.) It is unlawful to "corruptly or by threats or force, or by any threatening letter or communication," to influence, obstruct, or impede, or to endeavor to influence, obstruct, or impede, the due administration of justice[.]" 18 U.S.C. § 1503(a). Mr. Cobb's allegations regarding obstruction of justice share the common theme that the RICO Defendants have stymied his efforts to pursue the civil litigation and to obtain bank records in those cases. (*See, e.g.,* Compl. ¶ 449 (alleging that the Cisco Defendants "have played an ongoing role in the execution of coercive pressure and disruptive attacks in the guide of work … in and around key filing dates in the civil actions….") ¶ 452 ("[a]ll of these efforts were then bolstered by the continuing evasive maneuvers from Chase Bank as preventing the acquisition of evidence" of the alleged money laundering).)

With respect to these allegations, an equally plausible inference is that there were valid challenges to the discovery requests or that the work assignments were legitimate. Mr. Cobb's conclusory allegations that "the Enterprise proceeded to unduly influence [his] attorneys to undermine his basis of success…." also are insufficient to show that the RICO Defendants obstructed justice. (*See* Compl. ¶ 450.) To the extent Mr. Cobb relies on allegations that Mr. Sinclicito, Mr. Smith and Morgan Lewis caused the *Brede* and *Consuji* litigations to be dismissed

1    by preparing falsified orders, for the reasons set forth in its Order dismissing the RICO Claim

2    asserted by Mr. Cobb, Sr., the Court finds those allegations insufficient to show the RICO

3    Defendants' obstructed justice. *See JPMorgan*, 2012 WL 5335309, at *8.

4         The Court concludes that Mr. Cobb has not alleged facts showing that any of the RICO

5    Defendants engaged in obstruction of justice as a predicate act to support the Civil RICO claim.

6              **e.    Mail Fraud and Wire Fraud, 18 U.S.C. Sections 1341 and 1343.**

7         Mr. Cobb also alleges that the RICO Defendants violated the mail and wire fraud statutes.

8    (Compl. ¶¶ 453-469, 473-484.)  Each of these statutes requires that a defendant form a scheme for

9    the purpose of obtaining money or property. *See, e.g., Carpenter v. United States*, 484 U.S. 19, 27

10   (1987); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 940 (9th Cir. 2006).  Many of the allegations of

11   mail and wire fraud pertain to Mr. Cobb's efforts to obtain documents from various institutions or

12   individuals.  (Compl. ¶¶ 453-459, 461-468, 473-484.)  Those allegations do not, however, include

13   allegations that describe a scheme to obtain money or property.  Rather, they describe a scheme to

14   prevent Mr. Cobb from obtaining records.  Mr. Cobb also alleges that "any and all mailings

15   performed by … [Ms. Altamirano] … or performed on her behalf" in the family law proceedings

16   constitute acts of mail fraud.  (*Id.* ¶ 469.)  Again, however, these allegations do not describe a

17   scheme to obtain money or property.

18        The Court concludes that Mr. Cobb has not alleged facts showing that any of the RICO

19   Defendants engaged in mail or wire fraud as predicate acts to support the Civil RICO claim.

20             **f.    Money Laundering, 18 U.S.C. Section 1956.**

21        Finally, Mr. Cobb alleges that the RICO Defendants engaged in or are complicit in acts of

22   money laundering, in violation of 18 U.S.C. Section 1956.  (Compl. ¶¶ 470-472.)  Although Mr.

23   Cobb incorporates by reference all previous allegations, the allegations that relate to allege money

24   laundering are entirely conclusory and unsupported by facts.  (*Id.*)  The Court concludes that Mr.

25   Cobb has not alleged facts showing that any of the RICO Defendants engaged in money

26   laundering as a predicate act to support the Civil RICO claim.

27        In sum, the Court finds that Mr. Cobb has not "nudged" his Civil RICO claim "across the

28   line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  Accordingly, the Court GRANTS

United States District Court
Northern District of California

1    the RICO Defendants' motion to dismiss this claim for relief.  Because the Court has found that

2    Mr. Cobb fails to allege a Civil RICO claim under 18 U.S.C. Section 1962(c), Mr. Cobb's RICO

3    Conspiracy claim fails as well, and the Court GRANTS the motion to dismiss that claim as well.

4    *Turner v. Cook*, 362 F.3d 1219, 1231 n.17 (9th Cir. 2004) (quoting 18 U.S.C. § 1962(d)).

5            The Court addresses Mr. Cobb's right to amend these claims in the following section.

6    **G.     The Court Denies Mr. Cobb Leave to Amend the Federal Claims.**

7            The Court recognizes that, in general, it should be liberal in granting leave to amend,

8    especially where, as here, a plaintiff is proceeding *pro se*.  *See Weilberg v. Shapiro*, 488 F.3d

9    1202, 1205 (9th Cir. 2007).  However, Mr. Cobb already amended the complaint once as a matter

10   of right.  In addition, his claims are largely duplicative of the claims he asserted, and dismissed, in

11   the *JPMorgan*, litigation, and the Court dismissed Mr. Cobb Sr.'s claims in that case with

12   prejudice.  Thus, the second iteration of the Complaint in this case is Mr. Cobb's third attempt to

13   state a Civil RICO claim on many of the same facts.  The Court concludes that the deficiencies

14   identified by this Order with regard to the Civil RICO and RICO Conspiracy claims could not be

15   cured by further amendment.  In addition, the Court concludes that Mr. Cobb would not be able to

16   cure the defects identified with respect to the Section 1983 claim, and it denies leave to amend that

17   claim as well.

18           Accordingly, the Court DENIES Mr. Cobb leave to amend the federal claims, and it

19   dismisses those claims with prejudice.[10]

20   _____

21   [10]    Although Mr. Ferris, Mr. Pierce, Mr. Raditch and the Santa Clara County District
     Attorneys' Office have not appeared, "[a] District Court may properly on its own motion dismiss
22   an action as to defendants who have not moved to dismiss where such defendants are in a position
     similar to that of moving defendants or where claims against such defendants are integrally
23   related." *Silverton v. Dep't of Treasury*, 644 F.2d 1341, 1345 (9th Cir.1981).  "Such a dismissal
     may be made without notice where the [plaintiff] cannot possibly win relief."  *Omar v. Sea-Land
24   Serv., Inc.*, 813 F.2d 986, 991 (9th Cir.1987); *see also Columbia Steel Fabricators, Inc. v.
     Ahlstrom Recovery*, 44 F.3d 800, 802 (9th Cir.1995) ("We have upheld dismissal with prejudice in
25   favor of a party which had not yet appeared, on the basis of facts presented by other defendants
     which had appeared.").
26

27           Mr. Ferris, Mr. Pierce, Mr. Raditch and the Santa Clara County District Attorneys' Office
     are named as RICO Defendants, and the Court's ruling on the RICO Claims would apply equally
28   to them.  In addition, the Santa Clara County District Attorneys' Office is named in the Section

United States District Court
Northern District of California

United States District Court
Northern District of California

1    **I.        The Court Declines to Exercise Supplemental Jurisdiction Over the State Law Claims**

2            The remaining claims are state law claims between parties who are not completely diverse.

3    Many of the defendants urge the Court to decline to exercise supplemental jurisdiction over the

4    state law claims.  A district court may decline to exercise supplemental jurisdiction in a case

5    arising from a common nucleus of operative fact where: (1) a novel or complex issue of state law

6    is raised; (2) the claim substantially predominates over the federal claim; (3) the district court

7    dismisses the federal claims; or (4) under exceptional circumstances.  *See* 28 U.S.C. § 1367(c).  In

8    order to make this determination, courts should consider factors such as "economy, convenience,

9    fairness, and comity."  *Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997)

10   (internal quotations and citations omitted).

11           When "federal-law claims are eliminated before trial, the balance of factors to be

12   considered ... will point toward declining to exercise jurisdiction over the remaining state-law

13   claims."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988), superseded by statute, 28

14   U.S.C. § 1447(c); *see also United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966)

15   (suggesting in dicta that "if federal claims are dismissed before trial, ... the state claims should be

16   dismissed as well") (footnote omitted), superseded by statute, 28 U.S.C. § 1367.  The United

17   States Supreme Court has explained that "[n]eedless decisions of state law should be avoided as

18   both a matter of comity and to promote justice between the parties, by procuring for them a surer-

19   footed reading of applicable law."  *United Mine Workers*, 383 U.S. at 726 (footnote omitted).

20           The Court has dismissed the federal claims with prejudice.  It would be equally convenient

21   for the parties to try the remaining claims in state court.  Further, with the exception of resolving

22   these motions to dismiss, the Court has expended few resources in supervising this case and a trial

23   has not yet been set.  *Cf. Trustees of the Construction Indus. & Laborers Health & Welfare Trust*

24   *v. Desert Valley Landscape & Maintenance, Inc.*, 333 F.3d 923, 926 (9th Cir. 2003) (finding an

25   

26   1983 claim, and the allegations against it appear to be related to the criminal case.  The Court's
     ruling on that claim as to the San Mateo County District Attorney's Office would apply equally to
27   the Santa Clara County District Attorney's Office.  Accordingly, the Court dismisses the federal
     claims against these defendants with prejudice as well.
28

abuse of discretion where the district court ordered a dismissal of state law claims just seven days before trial and after long delays).  Therefore, the principles of comity, convenience, and judicial economy weigh against retaining supplemental jurisdiction in this case.

Accordingly, the Court dismisses the state law claims without prejudice.  If Mr. Cobb re-files these claims in state court, the defendants are free to renew the arguments raised in their motions to dismiss these claims in that forum.

The Court shall issue a separate judgment, and the Clerk shall close the file.

**IT IS SO ORDERED.**

Dated:  November 27, 2013

_____
JEFFREY S. WHITE
United States District Judge